The next matter on our calendar, there are really two matters being heard in tandem. The first one is Frederick Ostrov versus United States. And the other one is Jeffrey Malkan versus Mutua. And the first one is, I guess we're going to hear Ostrov versus the United States District Court. Is that you, Mr. Ostrov? Yes, it is, Your Honor. Go on. And you're complaining about, go on. Yes, I am complaining about the magistrate's report and recommendation and the district judge's partial endorsement of it. And I want to start off by saying thank you for hearing me because this is the first time, despite my reputation being besmirched, that any judge had the courtesy to stand before me and hear what I have to say or ask me questions about why I did what I did. I want to note that the first thing here is the frivolous standard. I mean, we're supposed to be assessing not whether or not what I said happened, but whether or not what I did, the motion that I made seeking sanctions, was frivolous. Whether or not there were no reasonable grounds or not a scintilla of evidence to make the argument that this particular witness, who happened to be the dean of a law school, lied under oath twice. Which quite frankly, I still to this day absolutely think he did. And I absolutely think that anybody who reviews the totality of circumstances in this situation would know that he did lie and was lying. And that's exactly why the co-defendant in that case, Ewing, through a very prominent firm in Buffalo, Mr. Randy Oppenheimer, made a motion to sever. He specifically made that motion to sever because he knew that the jury would feel that Matua lied and he didn't want to have an, quote, indelible stain on his client. Because the jury would, quote, impute Matua's bad acts to Ewing. So at least Ewing and his lawyer also thought the same thing that I thought, and that we all thought would be obvious to a jury. And quite frankly, I think that anyone who reads Mr. Oppenheimer's papers would be left with the distinct and unequivocal impression that this man did lie under oath twice. And I think that his lawyer knew that he lied under oath twice. And I think that's why his lawyer answered the answer about this question the way he did. And I think it's the reason why he answered the interrogatory by saying it was irrelevant, which it was not irrelevant. Now the district court in endorsing and finding along with the magistrate said, quote, counsel's actions and unduly contentious behavior. And then he goes on to say are worthy of verbal sanctions. I want to point out that it appears to me that the district judge didn't read all the papers. Because I was never even so much as accused of unduly contentious behavior. And yet I was verbally sanctioned for unduly contentious behavior. The defendants never accused me of it. The magistrate's report and recommendation didn't say that I did it. And I'm going to read from the docket 90-1. This is from opposing counsel to me in an email which is part of the docket here. Counselors, it has been clear to me for some time that you cannot always control your client. But I've never questioned your professional integrity because of this. I understand, as lawyers, all we can do is counsel. But clients sometimes do not heed our advice. The tone of this litigation amongst counsel has thus far been courteous, and I would like to keep it that way. However, if you file a frivolous rule 11 sanctions motion, that will change. So here's opposing counsel saying that I wasn't being contentious. Now, after that email, the only thing that happened is we filed our motion. He said it was frivolous. The magistrate found that it was frivolous. It wasn't frivolous. The man unequivocally committed perjury. I don't know how anybody can look at, there were 19 people in that room. Not one person endorses what he says. Eight witnesses came forward, law school professors, and testified under oath that what he said was a totally different version of events. And even when presented, there were contemporaneous notes also showing what the vote was. And even when he was presented with all of that information, his response was not, maybe I misremembered. He didn't say that. He said, no, I very clearly remember that meeting, and there was no vote on Malkin's promotion. Now, the magistrate found that none of this was material anyway. The magistrate said, quote, the court can fathom no reason to fixate on Matua's recollection of this meeting other than to harass Matua. Well, first of all, the reason to fixate it is because it's relevant. Opposing counsel was fixated on it. We did the math, 17% of plaintiff's deposition related to this issue. Plus, opposing counsel asked all other witnesses about it. So obviously, opposing counsel was fixated on it and thought it was important. Plus, the implication was that if there was no vote, there was no property interest, which is central to the case. And Judge Ikaria, in the motion to dismiss, which was completely ignored, both on the sanctions motion and my former client's summary judgment motion. His decision on the motion to dismiss said, quote, the underlying policies and written common law applicable to faculty appointment would be relevant in the matter. Well, whether or not the policies existed and whether or not they were followed included whether or not there was a vote and what the result of that vote was. So for the court to say it cannot fathom any idea as to how this could be relevant, it's mind blowing. It just goes to show the blatant error in these decisions by these judges. Unless the vote itself was irrelevant. Well, I think that's what they thought. I think at a minimum, Judge Ikaria also said we're entitled to seek punitive damages against Matua. And Judge Ikaria said, in seeking punitive damages, whether or not Matua, the extents Matua would go to, to avoid Malcon having to stay on campus, is relevant to punitive damages. So- He was right, Matua, and had the right not to renew the contract, no matter what the faculty thought or whoever was at the meeting, then what he said on the stand was irrelevant. Well, it wouldn't be irrelevant to his veracity and it wouldn't be irrelevant to punitive damages. I mean, the whole case would be dismissed if that's true, so I guess under that rubric it is irrelevant. But I didn't know at that time that the case was going to get dismissed on that basis. In fact, the dismissal completely disagrees and the standard that was held, and if that was in fact true, we didn't have to do any discovery in the case. But the bottom line is, at the absolute barest minimum of factors, it was relevant background information, which is why it was included in the second sentence of Judge Ikaria's decision when he was describing the background facts of the case on the motion to dismiss. There's no way you would try this case without that coming up. And if a jury felt that Matua lied, which I think unequivocally that they would. Randy Oppenheimer, who filed on behalf of Ewing the motion to sever, also felt that they would and that his bad acts would stain his client. If the jury felt that Matua lied about that issue, that would be a really big focus at the trial. And it could affect whether or not they believed anything else that Matua said. But if this was decided by the SUNY rules, then whatever anyone said was not relevant. Well, if it was decided the way that the judge ultimately decided the case, then nothing's relevant because the rule's the rule, we shouldn't have even had discovery. Don't the rules compel a conclusion? Judge Ikaria disagreed. I mean, I'm not here prepared to argue that particular point. I'm sure Mr. Malkin will. But I will say that if you read the motion to dismiss, if what your Honor's saying is true, and if what the district court's ultimate finding is true on the merits of the matter, which is beyond the sanctions motion, then we didn't have to have any discovery and the motion to dismiss should have been granted. But at the time I was dealing with this, and I still don't think that's true, but that's for Mr. Malkin to argue. But at the time I was dealing with this, the only decision on the case indicated that that was not true. Judge Ikaria's decision set this for discovery and talked about the issues for us to explore in discovery. And they included some of these things. And that's why defense counsel was focused on it in discovery as much as we were, which is a statistical fact. And the bottom line is, again, I'm not arguing here the merits. All I'm saying is, I carefully considered, and if you read my emails which are in here, I wrote nice emails to imposing counsel. I gave him case law, I gave him support, I said what I had to say as nicely as possible. I wasn't contentious, but I did hold an honest and firm conviction, which I still hold, that his client lied, and that he should have done something about it, and he didn't. Was it, am I wrong about that? Maybe I am. But was it frivolous for me to put that before the court? It wasn't a frivolous act. It wasn't something that I should be sanctioned for. We have your argument. You exceeded your time, and the other side is on submission. So that's a perfect position to be in. No one is going to refute anything you said. I appreciate it, Your Honor. Thank you.